UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. JOSEPH A. LAROSKI, JR. JUDGE

| | |
|---|---|
| Precision Components, Inc,<br><br>                Plaintiff,<br><br>   v.<br><br>United States.<br><br>                Defendant. | Ct No. 23-00218 |

**MEMORANDUM OF LAW IN SUPPORT OF THE
RULE 56.2 MOTION OF PLAINTIFF
PRECISION COMPONENTS, INC FOR JUDGMENT
UPON THE AGENCY RECORD**

David J. Craven, Esq.
CRAVEN TRADE LAW LLC
3744 N Ashland Avenue
Chicago, Illinois 60613
Tel. 773-709-8506
David.craven@tradelaw.com
   Counsel for Plaintiffs

Dated: April 3, 2024

## TABLE OF CONTENTS

I.    Introduction ................................................................................................................1

II.   Statement Pursuant to Rule 56.2(C) ...........................................................................2

    A.  Administrative Determination Under Review .............................................................2

    B.  Issues of Law ..............................................................................................................2

III.  Summary of Arguments ...............................................................................................3

IV.   Statement of Facts .......................................................................................................3

V.    Standard of Review ......................................................................................................6

VI.   Argument .....................................................................................................................9

    A.  The Plain Language of the Order Should Control ......................................................9

        1.  HTS Provisions Support Classification as a Material, Not a Part ........................12

        2.  Customs Has Historically Classified These Blanks as Materials, Not Parts of Bearings ...............................................................................................12

        3.  The Blanks are not Made from Bearing Steel ......................................................13

        4.  The Blanks Undergo Significant Processing to be Converted into a Part ..............15

VII.  Conclusion .................................................................................................................16

TABLE OF AUTHORITIES

**Court:**

*Alsthom Atlantique v. United States*, 787 F.2d 571 (Fed. Cir. 1986)................................11

*ArcelorMittal Stainless Belg. N.V. v. U.S.*, 694 F.3d 88 (Fed. Cir. 2012) ........................9

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1562 (Fed. Cir. 1984) ..............................7

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 284, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974) ...................................................................... 10

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1377 (Fed. Cir. 2012).......................................................................................10

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 842 (1984) ..................6

*Consolidated Edison Corp. v. Labor Board*, 305 U.S. 229 (1938)......................................7

*Diversified Products Corp. v. United States*, 6 CIT 161 (1983)..........................................7

*Dorbest Ltd v. United States*, 462 F. Supp. 2d 1302 (Ct. Int'l Trade 2006)......................8

*Ericsson GE Mobile Communications, Inc. v. United States*, 60 F.3d 782 (Fed.Cir.1995)...............................................................................................11

*Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034, 1038 (Fed. Cir. 1996)..........................6

*Gerald Metals, Inc. v. United States*, 132 F.3d 720 (Fed. Cir. 1997)................................8

*Jinan Yipin Corp. v. United States*, 637 F. Supp. 2d 1183 (Ct. Int'l Trade 2009)..............8

*King Supply Company LLC v. United States*, 674 F.3d 1343 (Fed. Cir. 2012) ...............11

*Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1327 (Fed. Cir. 2009) ..............................9

*Nan Ya Plastics Corp. v. United States*, 810 F.3d 1344 (Fed. Cir. 2016) ..........................8

*Novosteel SA v. United States,* 284 F. 3d 1276 (Fed. Cir. 2002) ........................................9

*Pesquera Mares Australes Ltda. v. United States,* 266 F.3d 1379 (Fed. Cir. 2001) .................................................................................................6

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1191 (Fed. Cir. 1990)..............................8

*Saha Thai Steel Pipe Co., Ltd. v United States*, 828 F. Supp. 64 (Ct. Intl Trade 1993) ................................................................................................9

*Shakeproof Assembly Components Div. of Ill. Tool Works v. United States*, 268 F.3d 1382 (Fed. Cir. 2001)....................................................................8

*SKF USA, Inc. v. United States,* 254 F.3d 1028 (Fed. Cir. 2001)....................................10

*Smith Corona Corp. v. United States*, 915 F.2d 686 (Fed.Cir.1990)................................11

*Thai Pineapple Canning Indus. Corp. v. U.S.*, 273 F.3d 1085 (Fed. Cir. 2001) ...............9

*Tung Mung Dev. Co., v. United States*, 354 F.3d 1378 (Fed. Cir. 2004)..........................10

*Universal Camera Corp. v. NLRB*, 340 U.S. 477 (1951) ....................................................7

*USX Corp. v. United States*, 11 CIT 84, 655 F. Supp. 489 (1987) ......................................7

*Wheatland Tube Company v. United States,* 161 F.3d. 1365 (Fed. Cir. 1998)...................11

*Wheatland Tube Co. v. United States,* 495 F.3d 1361 (Fed. Cir. 2007) .............................7

*Yangzhou Bestpak Gifts & Crafts Co. v. US*, 716 F.3d 1379 (Fed. Cir. 2013)....................

**Statute and Regulation:**

19 U.S.C. § 1516a (a)(2)(B)(iii) ..........................................................................................2

19 U.S.C. §1516a(b) ............................................................................................................6

19 U.S.C. §1673d(c)(5) ........................................................................................................6

19 C.F.R. § 351.225(a) .......................................................................................................10

19 C.F.R. § 351.225(k)(1) ..................................................................................................10

**Administrative:**

*Antidumping Duty Order; Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, from the People's Republic of China*, 52 Fed. Reg. 22667(June 15, 1987)...................................................................................................3

*Tapered Roller Bearings from the People's Republic of China; Amendment to Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order in Accordance With Decision Upon Remand*, 55 Fed. Reg. 6669 (February 26, 1990) ................................................................................... 3-4

*Tapered Roller Bearings and Parts Thereof and Certain Housings Incorporating Tapered Rollers from China, Hungary, and Romania,* Invs. 731-TA-341, 344 and 345 (Final)(June 1, 1987) (USITC Pub 1983) ...........................................14

*Certain Bearings from China, France, Germany, Italy, Japan, Singapore, and the United Kingdom*, Invs. 731-TA-344, 391-A, 392-A and C, 393-A, 394-A, 396, and 399-A (Second Review)(August 1, 2006)(USITC Pub. 3876) ...................................................................................................................15

## I.  <u>INTRODUCTION</u>

This is an appeal challenging the Final Scope Ruling issued by the United States Department of Commerce, International Trade Administration (ITA) in connection with the outstanding order on *Tapered Roller Bearings and Parts Thereof, Finished and Unfinished from the People's Republic of China*.

Plaintiff Precision Components, Inc ("PCI") was the requestor of the scope ruling at issue and was a party to the proceeding, having actively participated in the process.

The Plaintiff assert the following errors in the Commerce Department's ("Commerce's") final determinations:

- The Department erred when it found that the blanks imported by PCI from the PRC were within the scope of the antidumping duty order.

- The Department is authorized to interpret the scope of an antidumping duty order, but cannot enlarge the scope of the order through such interpretation.

- The plain meaning of the scope language contained in the order controls the scope.  It is plaintiff's position that the plain language of the order which covers parts of bearings, exclude raw materials (blanks) consisting of non-bearing grade steel imported prior to, and not capable of, heat treatment, the inclusion of such blanks within the scope of the order is an impermissible enlargement  of the scope.

1

## II.    STATEMENT PURSUANT TO RULE 56.2(c)

### A. Administrative Determination Under Review

This action is brought pursuant to 19 U.S.C. § 1516a (a)(2)(B)(iii) to contest the final results of Commerce's Final Scope Ruling issued in *Tapered Roller Bearings and Parts Thereof, Finished and Unfinished from the People's Republic of China* ("Final Results") (PR 22)[1]

In the Final Scope Ruling, Commerce found that the merchandise the subject of the scope ruling fell within the scope of the antidumping duty order.

### B. Issues of Law

The Plaintiffs present the following issues of law.   In each instance, Commerce's decision was not based on substantial evidence on the record, and was arbitrary and capricious, an abuse of discretion, and not otherwise in accordance with law.  The issues are:

1. **Issue.**  Whether the Department's finding that steel blanks that had not been heat-treated and were not made of bearing grade steel were subject to the antidumping duty order as parts of bearings was arbitrary and capricious and an abuse of discretion.

---

[1] "PR" is a reference to the Public Record, "CR" is a reference to the Confidential Record.

2. **Issue.** Whether the Department has the legal authority to expand the scope of an order to include within the scope product which is outside of the scope of the order.

### III.   <u>SUMMARY OF ARGUMENTS</u>

- The plain language of the order should control   The product the subject to this scope ruling is a blank made of non-bearing quality steel.  Such blank is a raw material used to manufacture bearing parts, not an unfinished bearing part.
- The Harmonized Tariff nomenclature does not classify raw materials used to make bearings, are not bearing parts.   Such materials are classified as materials "Suitable for use in the manufacture of ball or roller bearings"
- Customs classifies these blanks as materials, not as parts of bearings.   While not controlling, it further supports plaintiff's position that these are not parts.
- The blanks are not made from bearing steel.  Bearing steel is defined in the HTS and the blanks do not possess the chemistry to be classified as bearing steel.
- The blanks undergo significant processing in order to be converted into a part. These operations change the physical make-up of the goods and significantly increases the value.

### IV.   <u>STATEMENT OF FACTS</u>

The antidumping order on Tapered Roller Bearings from China was published on June 15, 1987.  See *Antidumping Duty Order; Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, from the People's Republic of China*, 52 Fed. Reg. 22667 (June 15, 1987), as amended, *Tapered Roller Bearings from the People's Republic of China; Amendment to Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order in Accordance With Decision Upon Remand*,

55 Fed. Reg. 6669 (February 26, 1990).  This appeal concerns the April 24, 2023 scope  ruling request seeking confirmation that low-carbon steel blanks fall outside of the scope of the AD order.  Commerce's scope ruling determination was issued on September 19, 2023.   See Memorandum from Jerry Xiao to James Maeder entitled "Antidumping Duty Order on Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China: Final Scope Ruling on Low-Carbon Steel Blanks. (PR 22 ) Such determination was not published in the Federal Register.

On May 25, 2023, pursuant to an application for a scope ruling filed on April 24, 2023, (PR 8 to PR 10) the Department deemed initiated the Scope Ruling Review.  See Memorandum to File from Melissa Porpotage titled *Antidumping Duty Order on Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China: Deemed Initiation of Scope Inquiry*. (PR 13)

During the course of scope proceeding, plaintiff and the U.S. domestic industry submitted comments to the Department.  (PR 18 and PR 19).    The Department did not issue a preliminary determination for comment.

The articles the subject to this scope ruling were rings of carbon steel, not bearing grade steel, which had not been carburized or heat treated prior to importation.  (PR 8 to PR 10 and CR 3 to CR 5).   Specifically,  the products in question  are  low-carbon steel blanks. These blanks  are  hollow cylinders with

4

dimensions from 2 inches to 39 inches.  These blanks weigh between 1 and 25 KG. In the form as imported,  and subsequently sold to the end users (US bearing manufacturing companies), such blanks are not bearing components.  The steel from which these blanks are made does not meet either the industry or the U.S. government standards for bearing steel and such blanks do not have the metallurgy, hardness or dimensional accuracy requires of bearing components.  These blanks are made from non-standard steel.  The U.S. bearing manufacturers add substantial value to the blanks by significant further processing which alters the chemistry of the steel, changes the hardenability of the steel, hardness the blanks, changes the tolerances of the blank by a factor 5 to 10 times, and essentially turns a raw material into a bearing component.  (PR 3 and CR 3)

The history of HTS treatment for this product is also a key fact.  These blanks are classified under either HTS 7227.90.10.60 or HTS 7227.90.20.60.  This is for provisions of steel made from other alloy steel other than bearing steel. Bearing steel is classified under 7227.90.10.30 or 7227.90.20.30.  These provisions only apply to bearing steel.

Tubes, pipes and hollow profiles suitable for making ball or roller bearings are *eo nomine* provided HTS 7304.59.10 and 7304.51.10.  These are not "parts of bearings" but are raw materials capable of being used in the production of ball or roller bearings.

5

Parts of bearings are classified under HTS 8482.91.

As these parts are not made of bearing steel there are no HTS provisions in 8482 that apply.

## V.    STANDARD OF REVIEW

The Court will hold unlawful Commerce determinations that are unsupported by substantial evidence on the record or are not otherwise in accordance with law. 19 U.S.C. §1516a(b). To determine whether Commerce's interpretation and application of 19 U.S.C. §1673d(c)(5) is "in accordance with law," the courts review the statute to determine whether "Congress has directly spoken to the precise question at issue." *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842 (1984).

If the statute is silent or ambiguous with respect to a specific issue, the U.S. Court of Appeals for the Federal Circuit has held that *Chevron* deference is owed Commerce's statutory interpretations as to appropriate methodology. *Pesquera Mares Australes Ltda. v. United States,* 266 F.3d 1372, 1379 (Fed. Cir. 2001). That analysis entails determining whether Commerce's construction of an ambiguous statute is "permissible." *See Chevron,* 467 U.S. at 843. A "permissible" construction is understood in terms of reasonableness; only reasonable interpretations will be upheld by the Court. *See Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034, 1038 (Fed. Cir. 1996) *('Chevron* requires us to defer to the agency's interpretation of its

own statute as long as the interpretation is reasonable."). To determine reasonableness, courts look to the express terms of the statute, the objectives of the statute, and the objectives of the statutory scheme as a whole. *Wheatland Tube Co. v. United States,* 495 F.3d 1355, 1361 (Fed. Cir. 2007).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951), *quoting Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938). Furthermore, "substantial evidence" must be measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (quotations omitted). Thus, "it is appropriate to set aside the ITA's decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to {that} view.'" *Diversified Products Corp. v. United States*, 6 CIT 155, 161 (1983) *quoting Universal Camera*, 340 U.S. at 488.

Moreover, Commerce's determination cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987). The substantial evidence standard requires more than mere assertion of 'evidence which in and of

itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (citation omitted).

Commerce also must make its decisions based on a fair and balanced comparison of the data.  To do otherwise is arbitrary and capricious. *See Atlantic Sugar, Ltd. v. United States*, 744 F.2d at 1562 ("substantial evidence" must be measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence.")  *See also, Jinan Yipin Corp. v. United States*, 637 F. Supp. 2d 1183, 1192 (Ct. Int'l Trade 2009).

Commerce is required to objectively evaluate all data on the record.  Thus, the agency must hold its preferences to the same test as it uses to evaluate respondent's proffered data.  *See, e.g., Dorbest Ltd v. United States*, 462 F. Supp. 2d 1262, 1302 (Ct. Int'l Trade 2006) (holding that Commerce must justify its decisions).

In addition, Congress intended that Commerce calculate dumping margins as accurately as possible and use the best available information.  *See Shakeproof Assembly Components Div. of Ill. Tool Works v. United States*, 268  F.3d 1376, 1382 (Fed. Cir. 2001); *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990); *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1379 (Fed. Cir. 2013). In *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1344 (Fed. Cir. 2016), the Court explained that a Commerce determination is

8

"'accurate' if it is correct as a <u>mathematical and factual matter</u>…" (Emphasis added). To achieve this required accuracy, "antidumping orders should not be interpreted in a vacuum devoid of any consideration of the way the language of the order is used in the relevant industry." *ArcelorMittal Stainless Belg. N.V. v. United States*, 694 F.3d 82, 88 (Fed. Cir. 2012). *See also, Saha Thai Steel Pipe Co., Ltd. v United States*, 828 F. Supp. 57, 64 (Ct. Intl Trade 1993) (".. .the Department has honored one of the fundamental principles underlying the trade statute –accuracy. It is this endeavor for accuracy … that lends respectability to U.S. trade statutes. .").

Moreover, "while various methodologies are permitted by the statute, it is possible for the application of a particular methodology to be unreasonable in a given case when a more accurate methodology is available…." *Thai Pineapple Canning Indus. Corp. v. United States*, 273 F.3d 1077, 1085 (Fed. Cir. 2001). Additionally, "to avoid distortions, the Department must consider all relevant factors, including those not present in most antidumping determinations." *Id*.

When substantial evidence is not utilized, such action is tantamount to the use of speculation in making a determination. *See Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute 'substantial evidence.'" (quoting *Novosteel SA v. United States,* 284 F. 3d 1261, 1276 (Fed. Cir. 2002) (internal quotation marks omitted)).

It is axiomatic that Commerce may not exert its authority in an arbitrary or capricious manner. *See, e.g., Tung Mung Dev. Co., v. United States*, 354 F.3d 1371, 1378 (Fed. Cir. 2004). Commerce's decision will be set aside if it is arbitrary and capricious. *See, e.g., SKF USA, Inc. v. United States.* 254 F.3d 1022, 1028 (Fed. Cir. 2001). "{A} reviewing court must apply both standards {substantial evidence, and arbitrary and capricious or contrary to law}, while  "an agency's finding may be supported by substantial evidence," yet "nonetheless reflect arbitrary and capricious action." *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974).

## VI.  <u>ARGUMENT:</u>

### *A. The Plain Language of the Order Should Control*

One of the primary tenets is that when Commerce is called upon to issue a scope ruling, it must take into account the plain language of the order.  The Federal Circuit stated:

> After an AD order is issued, Commerce is often called upon to issue "scope rulings" to clarify the scope of the AD order and determine whether particular products are included within its scope. Walgreen, 620 F.3d at 1352 (quoting 19 C.F.R. § 351.225(a)). In making such scope rulings, while the plain language of the AD order is paramount, Commerce must also take into account "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary [of Commerce] (including prior scope determinations) and the Commission." 19 C.F.R. § 351.225(k)(1);

Walgreen, 620 F.3d at 1357. Consequently, a scope ruling is a highly fact-intensive and case-specific determination.
*King Supply Company LLC v. United States*, 674 F.3d 1343 (Fed. Cir. 2012) at 1345.

Furthermore, Commerce cannot interpret an order such that it would change the ultimate scope of that order.  As noted by the Federal Circuit:

> Although Commerce "enjoys substantial freedom to interpret and clarify its antidumping duty orders," it can neither "change them," Ericsson GE Mobile Communications, Inc. v. United States, 60 F.3d 778, 782 (Fed.Cir.1995), nor interpret them "in a way contrary to [their] terms," Smith Corona Corp. v. United States, 915 F.2d 683, 686 (Fed.Cir.1990). See also Alsthom Atlantique v. United States, 787 F.2d 565, 571 (Fed.Cir. 1986) (The International Trade Administration "cannot change the scope of an underlying antidumping determination [to exclude an article] when Treasury has specifically included [that] article within the scope of its underlying determination." (emphasis in original)).
> *Wheatland Tube Company v. United States,* 161 F.3d. 1365 (Fed. Cir. 1998) at 1370

Yet in this scope determination, Commerce did just what the Courts told Commerce it could not do – it expanded the scope to include not only parts of bearings,  the expanded scope would include raw materials used to make parts and it reversed years of precedent.

The scope of the order is as follows:

Imports covered by the Order are shipments of tapered roller bearings and parts thereof, finished and unfinished, from China; flange, take up cartridge, and hanger units incorporating tapered roller bearings; and tapered roller housings (except pillow blocks) incorporating tapered rollers, with or without spindles, whether or not for automotive use. These products are currently classifiable under Harmonized Tariff Schedule of the United States (HTSUS) item numbers 8482.20.00, 8482.91.00.50, 8482.99.15, 8482.99.45, 8483.20.40, 8483.20.80, 8483.30.80, 8483.90.20, 8483.90.30, 8483.90.80, 8708.70.6060, 8708.99.2300, 8708.99.4850,

8708.99.6890, 8708.99.8115, and 8708.99.8180. Although the HTSUS item numbers are provided for convenience and customs purposes, the written description of the scope of the Order is dispositive.

This is a simple scope. The question to the Court is whether the blanks are "parts thereof, finished or unfinished" or whether, as contended by Precision, are materials from which parts (Rings) are produced. That these are a material used in the manufacture of a bearing, and not a part, is based on several key points.

### 1. *HTS Provisions Support Classification as a Material, not a Part*

Initially, the language of the HTS is relevant. Even if these blanks were made of Bearing Steel, which they are not, they would not be "parts of bearings" but rather raw material used to make bearings. HTS 7304.59.10 and 7304.51.10, which would cover blanks made of bearing steel, do not describe these articles as parts, but rather states that such articles are "Suitable for use in the manufacture of ball or roller bearings", not that they are parts of bearings. Parts of bearings are included in HTS 8428. As such, even if these blanks were made from bearing steel, which they are not, they would not be a "part" of a bearing, but rather would be a material used to manufacture a part. That a product, such as a blank, is further removed from a bearing than a material which is already out of scope, is strong evidence of the non-scope of the product.

### 2. *Customs Has Historically Classified These Blanks as Materials, not Parts of Bearings*

Customs has historically classified these blanks as materials, not bearings. As

discussed in the scope ruling request, Precision Components, for a period of about 20 years, imported blanks as outside of the scope of A-570-601. This "out of scope" claim was reviewed by CBP in 10 or more intensive reviews. In each review, CBP determined that these blanks were not in scope. This is reflected in the e-mail chain between plaintiff and CPB where, after initially proposing to place these blanks in the scope of the order, CBP finally determined that such product was out of scope. (PR 10 and CR 5) In 2020 these products were provisionally moved into the order, but such decision was based on an inadequate analysis and the fact that these blanks were made of materials that do not meet the definitions of bearing steel was not considered. (PR 10 and CR 5)

That CBP has not treated these blanks as falling in the scope of the order is further support of the claim that such blanks are not parts of bearings, but rather are a material.

### 3. The Blanks are Not Made from Bearing Steel

The term "bearing steel" is defined in the HTS. According to the Harmonized Tariff Schedule, Bearing Steel is defined as follows:

> Alloy tool steels which contain, in addition to iron, each of the following elements
> by weight in the amount specified:
> (i)   not less than 0.95 nor more than 1.13 percent of carbon;
> (ii)  not less than 0.22 nor more than 0.48 percent of manganese;
> (iii) none, or not more than 0.03 percent of sulfur;
> (iv)  none, or not more than 0.03 percent of phosphorus;

The steel from which the blanks are made is not bearing steel, not having physical

properties which must be present in bearing steel.  In particular, bearing steel must have a carbon content between .95% and 1.13%.  The steel in the blanks has only between 0.18% and 0.23% carbon.    Bearing steel must have between 0.22% and 0.48% manganese.   The steel in the blanks has between 0.6% and 0.95% manganese. (PR 8) The nature of the steel is very important to the operation of a bearing.  Low carbon alloy steel, which is the material from which the blanks are made, is also known as gear steel and has different mechanical properties.   This is important.  If a part does not have the appropriate mechanical properties, even if it "looks" like a bearing part to the naked eye, it does not function as a bearing.  Critically, the "gear steel", due to the comparative absence of carbon, is not able to be heat treated and thus does not have sufficient hardness.   (PR 8)

This is also reflected in the processing undertaken on bearing steel as opposed to gear steel.  Critically, parts made from bearing steel are treated by the industry standard Quench and Temper process.  However, blanks cannot be readily heat-treated.  Heat-treatment of low carbon alloy/gear steel cannot be readily heat-treated as the absence of a sufficient amount of carbon.  This is particularly important as the ITC has found that in order to be a part, an unfinished component must have been heat treated.   The Commission stated:

> Page A-7]"FINISHED AND UNFINISHED COMPONENTS OF TAPERED ROLLER BEARINGS—Finished components of tapered roller bearings are the rollers, cages, cones, and miscellaneous small parts (i.e., spacers and seals)that have been completely machined and polished and are ready for final assembly into a tapered roller bearing...Unfinished bearing components are the cones, cups, and rollers that have been **green machined and heat treated** (see section on the manufacturing process) but that requires final finishing, as described later in this report, before they can be assembled or finished into a tapered roller bearing and thus act as an antifriction device.

*Tapered Roller Bearings and Parts Thereof and Certain Housings Incorporating Tapered Rollers from China, Hungary, and Romania,* Invs. 731-TA-341, 344 and 345 (Final)(June 1, 1987) (USITC Pub 1983)

This was further supported by a subsequent ITC determination in which the Commission stated:

> For unfinished parts, such parts are included if (1) they have been heat-treated, or (2) heat treatment is not required to be performed on the part. Thus, the only unfinished parts not covered by these orders are those that will be subject to heat treatment after importation…

*Certain Bearings from China, France, Germany, Italy, Japan, Singapore, and the United Kingdom*, Invs. 731-TA-344, 391-A, 392-A and C, 393-A, 394-A, 396, and 399-A (Second Review)(August 1, 2006)(USITC Pub. 3876)

Critically, the steel blanks have not only not been heat-treated prior to importation, they cannot be heat-treated in their condition as imported. Furthermore, heat-treatment is required prior to their final conversion to a bearing part. This is in contrast to blanks made of bearing steel which are green machined and not heat treated prior to importation into the United States. While such bearing steel blanks are subject to the order, they can be readily distinguished from the blanks the subject to this matter, as such bearing steel blanks can be readily heat-treated without undergoing substantial processing prior to the heat-treatment process.

### 4.  *The Blanks Undergo Significant Processing to be Converted into a Part*

Steel blanks undergo significant processing in order to be converted into a bearing part. Steel blanks made to the unique specifications of each individual customer. In the case of the blanks the subject to this matter, the  customer specifies that their blanks are not to be made of standard bearing steel and do not possess the metallurgy, hardness or dimensional accuracy of bearings. The blanks are sold to US customers who significantly process the blanks.  This processing adds substantial value to the blanks by significant further processing.  The blanks are subject to This processing alters the chemistry of the steel, changes the hardenability of the steel,

hardness the blanks, changes the tolerances of the blank by a factor of 5 to 10. These operations are more than mere grinding and polishing. (PR 8)

The resultant bearing part produced from the blank has a different steel chemistry which in turn, results in different hardenability, hardness and physical properties. These bearing parts also have different technical properties and dimensional characteristics.

The substantial nature of the processing is also reflected in the value. The value of a bearing part is approximately 300 times that value of the steel blank. A rough blank

## VII.    CONCLUSION

Based on the foregoing, plaintiff respectfully requests that this Court grant their motion for Judgment on the Agency Record and remand this case to Commerce with instructions consistent with the points set forth in this memorandum. Specifically, the Court should find that the steel blanks are materials used in the production of bearings, but are not parts of bearings. Accordingly, such steel blanks are outside of the scope of the order.

Plaintiff respectfully requests that this court remand this matter to the Department of Commerce with instructions to reconsider the scope ruling.

Respectfully submitted,

/s/ David Craven
David Craven

David J. Craven
Craven Trade Law LLC
3744 N Ashland Avenue
Chicago, IL 60613
(773)709-8506
David.craven@tradelaw.com

Counsel to Precision Components LLC

Dated: April 3, 2024