IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| PRECISION COMPONENTS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 23-0218 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR JUDGMENT ON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant
  Attorney General

PATRICIA M. McCARTHY
Director

L. MISHA PREHEIM
Assistant Director

GEOFFREY M. LONG
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington D.C.  20044
Tel:  (202) 307-0159
E-mail:  Geoffrey.M.Long@usdoj.gov

OF COUNSEL:

JESUS N. SAENZ
Attorney
Office of the Chief
Counsel for Trade Enforcement
  & Compliance
U.S. Department of Commerce

July 12, 2024

Attorneys for the United States

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

STATEMENT PURSUANT TO RULE 56.2 ...................................................4

    I.    Administrative Determination Under Review ........................................4

    II.    Issue Presented For Review .................................................................5

STATEMENT OF FACTS ...............................................................................5

    I.    Regulatory Framework For Scope Rulings............................................5

    II.    The 2020 Final Scope Ruling ...............................................................6

    III.    The 2023 Final Scope Ruling ...............................................................9

SUMMARY OF THE ARGUMENT ..............................................................12

ARGUMENT ................................................................................................13

    I.    Standard Of Review ...........................................................................13

    II.    Commerce's Determination That The Order Covers Low-Carbon
           Steel Blanks Is Supported By Substantial Evidence And Otherwise
           In Accordance With Law ....................................................................14

          A.    The Language Of The Order And The 2020 Final Scope
               Ruling Are Primary Interpretive Sources, Pursuant To
               19 C.F.R. § 351.225(k)(1)....................................................14

          B.    PCI's Challenges To The 2023 Final Scope Ruling Cannot
               Overcome The Text Of The Order And The 2020 Final
               Scope Ruling.........................................................................16

CONCLUSION..............................................................................................21

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Altx, Inc. v. United States*, 370 F.3d 1108 (Fed. Cir. 2004)............................................................ 14

*Am. Silicon Techs. v. United States*, 261 F.3d 1371 (Fed. Cir. 2001)........................................... 14

*Broadcom Corp. v. Int'l Trade Comm'n*, 28 F.4th 240 (Fed. Cir. 2022) ..................................... 14

*Fedmet Res. Corp. v. United States*, 755 F.3d 912 (Fed. Cir. 2014) ........................................... 13

*Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034 (Fed. Cir. 1996)............................................... 14

*Global Commodity Grp. LLC v. United States*, 709 F.3d 1134  (Fed. Cir. 2013) ....................... 13

*King Supply Co. v. United States*, 674 F.3d 1343 (Fed. Cir. 2012)............................................... 13

*Meridian Products, LLC v. United States*, 851 F.3d 1375 (Fed. Cir. 2017)............................ 5, 13

*Mid Continent Nail Corp. v. United States*, 725 F.3d 1295 (Fed. Cir. 2013) .............................. 13

*Nippon Steel Corp. v. United States*, 458 F. 3d 1345 (Fed. Cir. 2006)......................................... 14

*Novosteel SA v. United States*, 284 F.3d 1261 (Fed. Cir. 2002) ................................................... 13

*Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 101 F.4th 1310 (Fed. Cir. 2024) .............. 17

*Sandvik Steel Co. v. United States*, 164 F.3d 596 (Fed. Cir. 1998) .............................................. 13

*Sango Int'l L.P. v. United States*, 484 F.3d 1371 (Fed. Cir. 2007).................................................. 6

*Shenyang Yuanda Aluminum Indus. Eng'g Co., Ltd. v. United States*,
   776 F.3d 1351 (Fed. Cir. 2015).................................................................................................... 5

*Tak Fat Trading Co. v. United States*, 396 F.3d 1378 (Fed. Cir. 2005) ......................................... 6

*Target Corp. v. United States*, 609 F.3d 1352 (Fed. Cir. 2010) ................................................... 15

*United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794 (Fed. Cir. 2020)..................... 5, 13

*Walgreen Co. v. United States*, 620 F.3d 1350 (Fed. Cir. 2010) .................................................. 13

*Wirth Ltd. v. United States*, 5 F. Supp. 2d 968 (Ct. Int'l Trade 1998)......................................... 18

*Zhaoqing Tifo New Fibre Co. v. United States*,
   355 F. Supp. 3d 1285 (Ct. Int'l Trade 2018) ...................................................................... 15, 21

Statutes

19 U.S.C § 1516a(b)(1)(B)(i) ........................................................................ 13

19 U.S.C. § 1516a(a)(2)(B)(vi) ..................................................................... 13

19 U.S.C. § 1673e(a)(2) ................................................................................. 5

Regulations

19 C.F.R. § 351.225 ....................................................................................... 5

19 C.F.R. § 351.225(a) ................................................................................... 5

19 C.F.R. § 351.225(e) ................................................................................... 6

19 C.F.R. § 351.225(k)(1) ............................................................... 5, 12, 14, 20

19 C.F.R. § 351.225(k)(1) (2020) ................................................................. 8

19 C.F.R. § 351.225(k)(1)(i) .......................................................................... 6

19 C.F.R. § 351.225(k)(1)(ii) .................................................................... 6, 18

19 C.F.R. § 351.225(k)(2) ........................................................................ 6, 21

19 C.F.R. § 351.225(k)(2) (2020) ................................................................. 8

Administrative Reports & Decisions

*Antidumping Duty Order: Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, from the People's Republic of China,* 52 Fed. Reg. 22,667 (Dep't of Commerce June 15, 1987) ............................................................................................................ 7

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300 (Dep't of Commerce Sept. 20, 2021) ..................................... 8

*Tapered Roller Bearings and Parts Thereof, And Certain Housings Incorporating Tapered Rollers from Hungary, The People's Republic of China, and Romania; Investigation Nos. 731-TA-341, 344, and 345 (Final)*, Publication 1983, June 1987 (ITC Publication 1983) ............ 20

*Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China: Final Results and Partial Rescission of Review; 2017-2018, 85 Frd. Reg. 9,459 (February 19, 2019)* ..................................................................................... 7

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:   THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

|  |  |  |
|---|---|---|
| PRECISION COMPONENTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 23-0218 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the rules of this Court, defendant, the United States, respectfully submits this response in opposition to the motion for judgment upon the agency record filed by plaintiff, Precision Components, Inc. (PCI).  PCI challenges the Department of Commerce's 2023 final scope ruling on low-carbon steel blanks, which found that the merchandise was within the scope of  the antidumping duty order covering tapered roller bearings and parts thereof, finished and unfinished (TRBs), from the People's Republic of China (China).  We demonstrate below that Commerce's scope ruling is supported by substantial evidence and otherwise in accordance with the law.  Accordingly, we respectfully request that the Court deny PCI's motion and enter judgment for the United States.

**STATEMENT PURSUANT TO RULE 56.2**

**I.     Administrative Determination Under Review**

The administrative determination under review is *Antidumping Duty Order on Tapered Roller Bearings and Parts Thereof, Finished and Unfinished From the People's Republic of*

4

*China: Final Scope Ruling on Low-Carbon Steel Blanks* (Dep't of Commerce Sept. 19, 2023)

(2023 Final Scope Ruling) (P.R. 22).

## II.    Issue Presented For Review

The issue presented for review is whether Commerce's scope ruling, in which the agency

concluded that PCI's low-carbon steel blanks from China are within the scope of the

antidumping duty order covering TRBs from China, is supported by substantial evidence and

otherwise in accordance with law.

## STATEMENT OF FACTS

## I.    Regulatory Framework For Scope Rulings

When Commerce publishes an antidumping duty order, it defines the scope of the order

by "includ{ing} a description of the subject merchandise, in such detail as {Commerce} deems

necessary." 19 U.S.C. § 1673e(a)(2). Because Commerce often must write scope language in

general terms, questions arise as to whether a particular product is included within the scope of

an existing order. *See Meridian Products, LLC v. United States*, 851 F.3d 1375, 1379 (Fed. Cir.

2017). "When issues arise as to whether a product is within the scope of an order, Commerce

issues 'scope rulings' that clarify the scope of an order . . . with respect to particular products."

*United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794, 799 (Fed. Cir. 2020) (quoting

19 C.F.R. § 351.225(a)).

When Commerce examines whether merchandise is within the scope of an order, it

follows the framework and procedures set forth in its regulations. *See* 19 C.F.R. § 351.225; *see*

*also Shenyang Yuanda Aluminum Indus. Eng'g Co., Ltd. v. United States*, 776 F.3d 1351, 1354

(Fed. Cir. 2015) (noting that "{t}here is no specific statutory provision governing the

interpretation of the scope of antidumping duty . . . orders."). Specifically, pursuant to 19 C.F.R.

§ 351.225(k)(1), Commerce "will consider the language of the scope and may make its

determination on this basis alone if the language of the scope, including the descriptions of merchandise expressly excluded from the scope, is dispositive."  However, at its discretion, Commerce may consider additional primary interpretative sources when conducting its analysis under paragraph (k)(1), including "the descriptions of the merchandise contained in the petition," "the descriptions of the merchandise contained in the initial investigation," "previous or concurrent determinations . . . by {Commerce} including prior scope rulings," and determinations by the International Trade Commission (ITC) "pertaining to the order at issue " *Id.* § 351.225(k)(1)(i).  Commerce may also consider "secondary interpretive sources," "such as any other determinations of the Secretary or the {ITC} . . . , {U.S. Customs and Border Protection CBP}} rulings or determinations, industry usage, dictionaries, and any other relevant record evidence." *Id.* § 351.225(k)(1)(ii).  However, the primary sources in subparagraph (k)(1)(i) will normally govern where there is a conflict between the primary and secondary (k)(1) sources.  *Id.*

If Commerce determines that the descriptions of the merchandise contained in the paragraph (k)(1) sources are dispositive, Commerce issues a final scope ruling regarding whether the product is subject to the order.  *See* 19 C.F.R. § 351.225(e); *Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1382 (Fed. Cir. 2005).  The (k)(1) sources are "dispositive" when they "definitively answer the scope question." *Sango Int'l L.P. v. United States*, 484 F.3d 1371, 1379 (Fed. Cir. 2007).  Only when the (k)(1) sources are not dispositive will Commerce further consider five factors set forth at 19 C.F.R. § 351.225(k)(2).

## II.    **The 2020 Final Scope Ruling**

On June 15, 1987, Commerce published the antidumping duty order covering imports of TRBs and parts thereof, finished and unfinished from, China.  *See Antidumping Duty Order: Tapered Roller Bearings and Parts Thereof, Finished or Unfinished, from the People's Republic*

6

*of China*, 52 Fed. Reg. 22,667 (Dep't of Commerce June 15, 1987) (*Order*).  As described in the

2023 Final Scope Ruling:

> The merchandise covered by the *Order* are tapered roller bearings and parts thereof, finished and unfinished, from China; flange, take up cartridge, and hanger units incorporating tapered roller bearings; and tapered roller housings (except pillow blocks) incorporating tapered rollers, with or without spindles, whether or not for automotive use.  These products are currently classifiable under Harmonized Tariff Schedule of the United States (HTSUS) item numbers 8482.20.00, 8482.91.00.50, 8482.99.15, 8482.99.45, 8483.20.40, 8483.20.80, 8483.30.80, 8483.90.20, 8483.90.30, 8483.90.80, 8708.70.6060, 8708.99.2300, 8708.99.4850, 8708.99.6890, 8708.99.8115, and 8708.99.8180.  Although the HTSUS item numbers are provided for convenience and customs purposes, the written description of the scope of the *Order* is dispositive.

2023 Final Scope Ruling at 2 (P.R. 22).[1]

---

[1]  The text of the *Order* as published in 1987 did not include the reference to the HTSUS item numbers contained in the 2023 Final Scope Ruling.  As stated by Commerce in a 2020 scope ruling discussed extensively in this brief, "{a}t the time the *Order* was issued, the United States was in the process of adopting the HTSUS.  After the adoption of the HTSUS, the *Order* was revised to include the new HTSUS schedule. *See, e.g., Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China: Final Results and Partial Rescission of Review; 2017-2018*, 85 FR 9459 (February 19, 2019)."  PCI's Letter, "Scope Ruling Application" (April 24, 2023) at Ex. 5 (*Antidumping Duty Order on Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China: Final Scope Ruling on Precision Components Inc.'s Green Machined but not Heat-Treated Components* (Dep't of Commerce June 12, 2020) (2020 Final Scope Ruling)) (P.R. 10; C.R. 5).  It is now uncontested that the order includes the HTSUS-related language set forth in the 2023 Final Scope Ruling.

We also note that PCI describes scope language that varies slightly from that set forth above.  Specifically, PCI begins its scope description with the phrase "Imports covered by the Order are shipments of tapered roller bearings," Pl. Mot. at 11-12 (ECF No. 17-1), rather than "The merchandise covered by the *Order* are tapered roller bearings," as used in the 2023 Final Scope Ruling.  It appears that PCI is using scope language set forth in the 2020 Final Scope Ruling.  *See* 2020 Final Scope Ruling at 2.  Although PCI does not cite to the scope stated in the 2023 Final Scope Ruling, PCI also does not challenge that statement of the scope, and there is no substantive difference between the scopes in the context of PCI's motion.

In 2020, PCI requested that Commerce determine whether its imported green machined, but not heat treated, products fall within the scope of the order.  *See* 2020 Final Scope Ruling at 1 (P.R. 10; C.R. 5).  In the 2020 Final Scope Ruling, Commerce determined that PCI's un-heat-treated TRB parts fell within the scope of the order "based on the totality of {Commerce's} analysis of the plain language of the scope and the criteria set forth under 19 CFR 351.225(k)(1) and (2)." *See id* at 11.  With respect to the text of the order, Commerce found that:

> {t}he scope language does not explicitly address TRBs that have been green machined but not heat treated, although unfinished TRBs are explicitly covered, and green-machined bearings could be understood to be unfinished TRBs, since such green machined bearings are destined to become TRBs, but require further processing and finishing before becoming finished TRBs (*i.e.*, they are unfinished TRB parts).

*Id*. at 7.

After considering the text of the order, Commerce examined the sources identified at 19 C.F.R. § 351.225(k)(1) (2020). *Id*. at 8.[2]  Commerce concluded that the (k)(1) sources were not dispositive in resolving the scope question, and proceeded to analyze the (k)(2) factors. Commerce considered the physical characteristics of the product, expectations of the ultimate users, ultimate use of the product, channels of trade in which the product is sold, and the manner in which the product is advertised and displayed.  *See id*. at 8-10.

For each factor under 19 C.F.R. § 351.225(k)(2) (2020), Commerce determined that record evidence supported finding the product at issue to be within the scope of the order.  *Id.*

---

[2]  In September 2021, the regulations pertaining to scope inquiries were modified to clarify the nature of Commerce's discretion in considering the interpretive sources listed under 19 C.F.R. § 351.225(k)(1).  *See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,323 (Dep't of Commerce Sept. 20, 2021).  The regulations pertaining to the 2023 Final Scope Ruling were not in effect during Commerce's analysis underlying the 2020 Final Scope Ruling.

For the physical characteristics factor, Commerce found that the mere fact that the green machined products were not yet heat treated did not demonstrate a "clear dividing line" sufficient to support a physical difference between the heated and non-heated product groups.  *Id*. at 8.  Commerce further found that the green machined, but not heat treated, products are "ultimately intended to be used as a finished TRB and ha{ve} the same end-use as unfinished TRB parts as well as finished TRBs."  *Id*. at 9.

Commerce also found that documentation provided by PCI supported that the product at issue was merely an unfinished TRB part and ultimately was intended to be further processed and used as a finished TRB upon export to a U.S. bearing manufacturer.  *Id.* at 8-9.  Commerce additionally found no meaningful differences in the channels of trade used for the green machined, but not heat treated, products and that of TRB parts and finished TRBs, and further found that "Precision Components functions solely as a conduit for unfinished TRB parts from China to U.S. producers."  *Id.* at 9.  Lastly with respect to the (k)(2) factors, Commerce found that PCI provided no evidence demonstrating that the advertising materials used for the green machined, but not heat treated, products was any different than that of unfinished TRBs.  *Id.* at 9-10.

In conclusion, Commerce found that "because the scope of *Order* covers 'tapered roller bearings and parts thereof, finished and unfinished,' . . . a reading of the plain scope, in conjunction with an analysis of the factors under 19 CFR 351.225(k)(2) demonstrates that un-heat treated TRB components are, in fact, unfinished TRBs."  *Id.* at 11.

### III.    The 2023 Final Scope Ruling

In April 2023, PCI filed a scope ruling request seeking Commerce to determine whether low-carbon steel blanks imported from China fall within the scope of the order.  *See* PCI's Letter, "Scope Ruling Application" (April 24, 2023) (PCI's Scope Ruling Request) (P.R. 8; C.R.

3).  In its scope ruling application, PCI described low-carbon steel blanks as "hollow cylinders with dimensions from 2 inches to 39 inches," weighing between one and 25 kilograms and made from "non-standard steel."  *Id.* at 4.  PCI stated that low-carbon steel blanks are made of low-carbon alloy steel with a carbon content of approximately 0.17 to 0.23 percent and a manganese content of approximately 0.6 to 0.95 percent.  *Id.* at 6.  PCI also explained that these parts have not been heat treated due to the low carbon content and that manufacturers in the United States "add substantial value to the blanks by significant further processing which alters the chemistry of the steel, changes the hardenability of the steel, hardness {*sic*} the blanks, {and} changes the tolerances of the blank by a factor 5 to 10 times . . . to make a finished bearing."  *Id.* at 4.

In response to the request, Commerce initiated a scope inquiry and provided an opportunity for interested parties to provide comments.  *See* Final Scope Ruling at 2 (P.R. 22); *see also* Commerce memorandum, "Antidumping Duty Order on Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China: Deemed Initiation of Scope Inquiry" (May 25, 2023) (P.R. 13).  The Timken Company, a domestic producer, submitted comments.  *See* Timken letter, "Tapered Roller Bearings from China: Comments on Precision Components Inc. Scope Inquiry" (June 26, 2023) (P.R. 18).  PCI submitted rebuttal comments in response to Timken's comments.  *See* PCI letter, "Tapered Roller Bearings from China: Rebuttal Comments on Timken's Comments on Scope Inquiry Low Carbon Blanks" (July 10, 2023) (P.R. 19).

On September 19, 2023, Commerce issued its Final Scope Ruling and concluded that PCI's low-carbon steel blanks are covered by the order.  *See* 2023 Final Scope Ruling at 1 (P.R.

22).[3]  Commerce explained that, in making this determination, it first examined "the language of the *Order* at issue and the descriptions of the product covered by PCI's Scope Ruling Request in conjunction with the sources provided in {19 C.F.R.§ 351.225(k)(1)}."  *Id.* at 6.  Commerce reasoned that "{w}hile the scope language does not explicitly address TRBs and parts made of low-carbon steel or bearing steel, unfinished TRB parts are explicitly covered."  *Id.*  Commerce thus considered whether PCI's low-carbon steel blanks are unfinished TRB parts.  Commerce concluded that they were, because "such parts are destined to become finished TRBs through further processing and finishing."  *Id.*  As support for this conclusion, Commerce relied on PCI's statement that the low-carbon steel blanks were sold the United States "to make a finished bearing" and on the lack of any indication by PCI that an alternative commercial use exists for the low-carbon steel blanks.  *See id.* (quoting PCI's Scope Ruling Request at 15 (P.R. 8; C.R. 3)).

Commerce next examined the sources identified in 19 C.F.R. § 351.225(k)(1), including prior scope rulings in the proceeding.  Commerce found that the products covered by PCI's 2023 scope ruling request were the same as those covered by the 2020 Final Scope Ruling.  Commerce explained that PCI itself had acknowledged in its 2023 scope ruling request that "{t}hese blanks were moved within the scope in 2020," *i.e.*, due to the 2020 Final Scope Ruling.  2023 Final Scope Ruling at 6 (P.R. 22) (quoting PCI's Scope Ruling Request at 13 (P.R. 8; C.R. 3)).  Moreover, Commerce concluded that, based upon a "compar{ison of} the photographs contained in PCI's Scope Ruling Request to photographs that PCI submitted in 2020," the products subject to PCI's request were the same products covered by the 2020 Final Scope Ruling.  2023 Final Scope Ruling at 6 (P.R. 22).  Commerce further noted that "PCI makes no assertions that the

---

[3]  Because the issues presented in the scope ruling request were not complex, Commerce found that issuance of a preliminary scope ruling was not warranted.  Final Scope Ruling at 1 (P.R. 22).

products here are different from the products Commerce examined and found covered by the scope of the *Order* in the 2020 Final Scope Ruling" and so Commerce found that the low-carbon steel blanks at issue are "the same products that Commerce reviewed in the 2020 Final Scope Ruling." *Id.*

Thus, Commerce again found PCI's merchandise to be covered by the order. *See id.* at 6-7. Commerce explained that since "the products subject to this inquiry are the same as the products subject to the 2020 Final Scope Ruling . . . the 2020 Final Scope Ruling is dispositive of whether PCI's low-carbon steel blanks are covered by the scope of the *Order*." *Id.* at 6-7.

## SUMMARY OF THE ARGUMENT

Commerce's determination should be sustained because it is supported by substantial evidence and otherwise lawful. The order does not expressly address low-carbon steel blanks. As PCI acknowledges, however, these products are destined to become TRBs and Commerce previously found these products to be covered by the order in the 2020 Final Scope Ruling. PCI cannot and does not challenge the 2020 ruling, which is a primary interpretive source within the meaning of 19 C.F.R. § 351.225(k)(1). Moreover, PCI concedes that the low-carbon steel blanks described in its 2023 scope ruling request are covered by the prior ruling.

Rather than acknowledging that these products are covered by a prior scope ruling that is not subject to collateral attack, PCI elides the dispositive sources and mounts a *de novo* challenge to the 2023 Final Scope Ruling. PCI argues that additional processing is necessary for the low-carbon steel blanks to become finished TRBs. But Commerce lawfully concluded that the low-carbon steel blanks are unfinished TRB parts, and none of PCI's arguments can overcome the language of the order and the 2020 Final Scope Ruling.

# ARGUMENT

## I.    Standard Of Review

The Court may review a determination by Commerce as to "whether a particular type of merchandise is within the class or kind of merchandise described in an existing . . . antidumping . . . duty order." 19 U.S.C. § 1516a(a)(2)(B)(vi). Specifically with respect to a scope ruling, this Court reviews "Commerce's analysis of the (k)(1) sources against the product in question" as an issue of fact under the substantial evidence standard. *United Steel & Fasteners*, 947 F.3d at 799; *see also Meridian Prods*., 851 F.3d at 1382 (citing *Fedmet Res. Corp. v. United States*, 755 F.3d 912, 919-22 (Fed. Cir. 2014)). This Court must affirm "a Commerce scope ruling that is supported 'by substantial evidence on the record' and otherwise 'in accordance with law.'" *Meridian Prods.*, 851 F.3d at 1381 (quoting 19 U.S.C § 1516a(b)(1)(B)(i)); *see United Steel & Fasteners,* 947 F.3d at 799.

Commerce enjoys substantial freedom to interpret and clarify its antidumping orders. *Novosteel SA v. United States*, 284 F.3d 1261, 1269 (Fed. Cir. 2002). A scope ruling involves "a highly fact-intensive and case-specific determination," *King Supply Co. v. United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012), and is "particularly within the expertise of {Commerce}." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998). Therefore, this Court "afford{s} 'significant deference to Commerce's interpretation of a scope order,' so long as Commerce's interpretation is not 'contrary to the order's terms' and does not 'change the scope of the order.'" *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013) (quoting *Global Commodity Grp. LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013)). After all, the interpretation of its own orders is "at the very heart of {Commerce's} expertise." *Walgreen Co. v. United States*, 620 F.3d 1350, 1355 (Fed. Cir. 2010).

A party challenging a determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F. 3d 1345, 1352 (Fed. Cir. 2006) (quotations omitted). That is because substantial evidence is "more than a mere scintilla," but "less than the weight of the evidence." *Altx, Inc. v. United States*, 370 F.3d 1108, 1116 (Fed. Cir. 2004) (quotations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Broadcom Corp. v. Int'l Trade Comm'n*, 28 F.4th 240, 249 (Fed. Cir. 2022) (quotations omitted). "Even if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Techs. v. United States*, 261 F.3d 1371, 1376 (Fed. Cir. 2001) (citing *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1044 (Fed. Cir. 1996)).

## II.    Commerce's Determination That The Order Covers Low-Carbon Steel Blanks Is Supported By Substantial Evidence And Otherwise In Accordance With Law

### A.    The Language Of The Order And The 2020 Final Scope Ruling Are Primary Interpretive Sources, Pursuant To 19 C.F.R. § 351.225(k)(1)

In its 2023 Final Scope Ruling, Commerce conducted its scope analysis in accordance with 19 C.F.R. § 351.225(k)(1). Specifically, Commerce first examined the "language of the *Order* at issue and the description of the product covered by PCI's Scope Ruling Request in conjunction with the sources provided in 19 CFR 351.225(k)(1)." 2023 Final Scope Ruling at 6 (P.R. 22). As explained above, the merchandise covered by the order includes "tapered roller bearings and parts thereof, finished and unfinished." *Id.* at 2. Based on this scope language, Commerce found that "unfinished TRB parts are explicitly covered" by the order. *Id.* at 6. Commerce concluded that the low-carbon steel blanks are indeed unfinished TRB parts, "since such parts are destined to become finished TRBs through further processing and finishing." *Id.* at 6. Commerce further noted that "the scope {language} does not contain any references to

steel grade or composition," and Commerce "therefore considered PCI's arguments differentiating bearing and non-bearing steel moot as it pertain{ed} to {its} analysis." *Id.* at 6 n.40.

Commerce next considered the primary interpretive sources listed in 19 C.F.R. § 351.225(k)(1) to determine whether PCI's product is covered by the order. Commerce considered its prior 2020 Final Scope Ruling, finding that the low-carbon steel blanks at issue are "the same products that Commerce considered in the 2020 Final Scope Ruling." *Id.* at 6. Commerce reached this conclusion based on PCI's admission in its 2023 scope ruling request, on a comparison of photographs of PCI's products in the 2020 and 2023 scope ruling requests, and on the fact that PCI did not claim that the steel blanks were not covered by the 2020 Final Scope Ruling. *See id.*

The 2020 Final Scope Ruling is a final determination that is not subject to collateral attack in this action. *See Target Corp. v. United States*, 609 F.3d 1352, 1363 (Fed. Cir. 2010) (holding that an unchallenged ITC final determination expanding the definition of the domestic like product was final and conclusive, such that Commerce's inclusion of similar products within an antidumping duty order was not subject to later collateral attack); *see also Zhaoqing Tifo New Fibre Co. v. United States*, 355 F. Supp. 3d 1285, 1299 (Ct. Int'l Trade 2018) ("In the interests of finality, Commerce's final determination in any antidumping proceeding is essentially immune to attack, except to the extent that a party commences a timely challenge of that final determination in this Court."). And as indicated above, PCI *agrees* that low-carbon steel blanks are covered by the 2020 Final Scope Ruling. *See* Pl. Mot. at 13 (stating that "{i}n 2020 these products were . . . moved into the order").

Despite this acknowledgement, PCI attempts an impermissible collateral attack on the 2020 Final Scope Ruling, which PCI asserts "was based on an inadequate analysis." Pl. Mot. at 13. PCI further asserts that "the fact that these blanks were made of materials that do not meet the definitions of bearing steel was not considered." Pl. Mot. at 13. But the time for PCI to challenge the 2020 Final Scope Ruling – using whatever arguments it viewed as most meritorious – has long since passed. Further, PCI identifies no subsequent Commerce ruling or court decision that calls the 2020 Scope Ruling into question, let alone held it invalid or otherwise not in accordance with the law. Thus, PCI provides no basis to dispute the dispositive nature of the 2020 Final Scope Ruling as a primary interpretive source. Having conceded that low-carbon steel blanks are subject to the 2020 Final Scope Ruling, PCI cannot challenge Commerce's use of the 2020 Final Scope Ruling as a primary interpretive, and dispositive, source in the 2023 Final Scope Ruling.

### B. PCI's Challenges To The 2023 Final Scope Ruling Cannot Overcome The Text Of The Order And The 2020 Final Scope Ruling

We have demonstrated above that the 2023 Final Scope Ruling is based on two primary sources, namely the language of the order and the 2020 Final Scope Ruling covering the same products as PCI's 2023 scope ruling request. While the above is more than sufficient to warrant judgment in the defendant's favor, PCI's specific challenges to Commerce's scope ruling also cannot withstand scrutiny. PCI's headline claim is that Commerce "must take into account the plain language of the order." Pl. Mot. at 10. In PCI's view, Commerce impermissibly expanded the scope of the order to include not only parts of bearings but also "raw materials." *Id.* at 11. Commerce also, in PCI's view, "reversed years of precedent." *Id.* PCI fails, however, to adequately support these assertions.

PCI relies on four "key points" in support of these arguments. *Id.* at 12. PCI's first argument is that "{HTSUS} 7304.59.10 and 7304.51.10, which would cover blanks made of bearing steel, do not describe these articles as parts, but rather states that such articles are 'Suitable for use in the manufacture of ball or roller bearings', not that they are parts of bearings." *Id.* at 12. This argument is unpersuasive because, as stated in the 2023 Final Scope Ruling, the order as it currently reads provides that "{a}lthough the HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope of the *Order* is dispositive." 2023 Final Scope Ruling at 2 (P.R. 22). Thus, even if low-carbon steel blanks do not fall within the HTSUS item numbers listed in the order, and even if some other subheading might be viewed as describing low-carbon steel blanks in a manner that PCI views as favorable, that is irrelevant to the question of whether the products are within the scope of the order. As found by Commerce, because "the scope {language} does not contain any references to steel grade or composition," there is no basis for differentiating between bearing and non-bearing steel to determine whether the order covers PCI's products. *Id.* at 6 n.40.

The Federal Circuit recently held that HTSUS subheadings cannot be read to contradict the written description of the scope of an antidumping duty order. In *Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 101 F.4th 1310 (Fed. Cir. 2024), the plaintiff asserted that the absence of the product in the HTSUS headings of an antidumping duty order showed that the order did not cover the product. The Federal Circuit rejected this argument, holding that "{t}he listed tariff codes are . . . what the Order instructs them to be," for convenience and purposes of the CBP. *Id.* at 1328. The court held that the tariff codes "cannot be reasonably read to contradict the 'written description' that the Order instructs to be 'dispositive.'" *Id.* Applied here, *Saha Thai* stands for the proposition that, whatever might be the HTSUS language within PCI's

preferred subheading, that cannot supersede the written description of the merchandise in the order.

PCI's second argument is that "{CBP} has historically classified these blanks as materials, not bearings." Pl. Mot. at 12. But prior CBP classification determinations are relevant if at all only as a *secondary* interpretive source. *See* 19 C.F.R. § 351.225(k)(1)(ii); *see also Wirth Ltd. v. United States*, 5 F. Supp. 2d 968, 978 (Ct. Int'l Trade 1998) ("Commerce's scope determinations are independent from Customs' classification determinations"). Here, Commerce did not reach secondary interpretive sources, because primary interpretive sources, specifically the language of the order itself and the 2020 Final Scope Ruling, had already established that the products in PCI's 2023 scope ruling request are covered by the order. Because Commerce's 2020 Final Scope Ruling is a primary interpretive source *covering the same PCI products* as raised in PCI's 2023 scope ruling request, Commerce lawfully afforded primacy to that scope ruling over any prior CBP tariff classification analysis. *See* 19 C.F.R. § 351.225(k)(1)(ii) (stating that primacy interpretive sources will normally govern "in the event of a conflict" with secondary interpretive sources).

PCI's third argument is that "{t}he steel from which the blanks are made is not bearing steel," as that term is defined in the HTSUS. *See* Pl. Mot. at 13. PCI further asserts that the low-carbon steel blanks that are the subject of its scope request "cannot be readily heat-treated," *id.* at 14, but rather require "substantial processing prior to the heat-treatment process." *Id.* at 15. Again, however, Commerce found that because "the scope {language} does not contain any references to steel grade or composition," there is no basis for differentiating between bearing and non-bearing steel to determine whether the order covers PCI's products. 2023 Final Scope Ruling at 6 n.40 (P.R. 22). PCI's argument focuses on an irrelevant point, as the order is not

18

limited by steel grade or composition. This conclusion is supported by substantial evidence – namely the language of the order – and is otherwise in accordance with law.

Moreover, Commerce explained in the 2023 Final Scope Ruling that in 2020 it "determined that heat treatment does not create a clear dividing line between product groups and unheated TRB parts fall{ing} within the scope of the *Order*." 2023 Final Scope Ruling at 6 n.46 (citing 2020 Final Scope Ruling at 11 (P.R. 10; C.R. 5)) (P.R. 22). Indeed, Commerce found in 2020 that PCI's low-carbon steel blanks are processed by manufacturers in the United States into TRBs. *See* 2020 Final Scope Ruling at 8 (P.R. 10; C.R. 5). Commerce found that these manufacturing steps do not take components that have been green-machined, but not heat-treated, outside the scope of the order. *See id.* PCI's challenge here, regarding the content of the steel at issue, is at most a new argument in support of its 2020 scope ruling request. But if PCI wished to deploy that argument to establish that low-carbon steel blanks are not covered by the order, then PCI needed to make the argument at that time.

Additionally, Commerce found in the 2023 Final Scope Ruling that PCI "does not indicate that an alternative commercial use exists for its low-carbon steel blanks." 2023 Final Scope Ruling at 6 (P.R. 22). This failure to provide evidence of any other use further supports Commerce's conclusion that low-carbon steel blanks are covered by the order.

PCI identifies two import injury investigation reports from the ITC that PCI argues show "the ITC has found that in order to be a part, an unfinished component must have been heat treated." *See* PCI Br. at 14-15. PCI neglects to note, however, that Commerce rejected PCI's reliance on these sources in the 2020 Final Scope Ruling. As found by Commerce in 2020, ITC Publication 3876 "pertains to the AD orders on ball bearings from France, Germany, Italy, Japan, Singapore, and the United Kingdom." 2020 Final Scope Ruling at 11 (P.R. 10; C.R. 5). PCI in

its motion for judgment mentions ITC Publication 3876 only in passing and makes no attempt to demonstrate that the scope at issue in that publication is at all relevant to the scope of the order, much less does PCI challenge the conclusion of the 2020 Final Scope Ruling.  In any event, PCI cannot collaterally attack the 2020 Final Scope Ruling.

With regard to ITC Publication 1983, Commerce explained in 2020 that the ITC "indicated that it had considered components which were green machined and heat treated to be within the scope, but did not specifically address components that have been green machined but not heat treated."  *Id*. at 7.  Commerce also noted that the ITC stated that "'neither finished nor unfinished parts or components have any commercial use other than as components of {TRBs}' . . .  and {a}s a result, {ITC} did not treat 'precursor materials,' such as unfinished forged finished bulk parts, unfinished outer and inner rings, as a separate class or kind."  *Id*. (quoting *Tapered Roller Bearings and Parts Thereof, And Certain Housings Incorporating Tapered Rollers from Hungary, The People's Republic of China, and Romania; Investigation Nos. 731-TA-341, 344, and 345 (Final)*, Publication 1983, June 1987 (ITC Publication 1983), at pages 8 and 6-7).  PCI quotes these ITC publications without acknowledging that Commerce addressed them in the 2020 Final Scope Ruling, much less does PCI provide any reason for the Court to question Commerce's settled conclusions.

PCI's fourth argument is a variation on its third.  PCI asserts that its "{s}teel blanks undergo significant processing in order to be converted into a bearing part."  Pl. Mot. at 15.  But the physical changes and value occasioned by further processing of a product in the United States are not factors that Commerce considers under 19 C.F.R. § 351.225(k)(1).  To the extent PCI is suggesting that Commerce here should have analyzed the product under the (k)(2) factors, PCI is incorrect.  Because Commerce found in the 2023 Final Scope Ruling that analysis of the

factors under 19 C.F.R. § 351.225(k)(1) was dispositive, Commerce correctly did not reach the factors set out in 19 C.F.R. § 351.225(k)(2).  In any event, Commerce *did* consider such (k)(2) arguments in its 2020 Final Scope Ruling and rejected them.  Commerce found that PCI "provided no evidence to substantiate the value added by heat treatment, how the heat treatment process for {PCI's} TRB parts differs from other heat treatment processes, or that the ultimate end-use of heat treated TRB parts is any different than that of {PCI's} un-heat treated TRB parts."  2020 Final Scope Ruling at 8 (P.R. 10; C.R. 5).  Again, Commerce's 2020 Final Scope Ruling was not challenged and is not subject to reevaluation in this case.  *Zhaoqing Tifo New Fibre Co.*, 355 F. Supp. 3d at 1300 ("Issues that are not the subject of a timely-filed complaint cannot, as a general rule, be entertained by the court.").

In sum, PCI's challenges fail to demonstrate that the 2023 Final Scope Ruling lacks substantial evidence or is otherwise not in accordance with law.  The Court should sustain Commerce's analysis under 19 C.F.R. § 351.225(k)(1).

<u>**CONCLUSION**</u>

For these reasons, we respectfully request that this Court deny plaintiff's motion for judgment on the agency record.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/L. Misha Preheim, by Tara K. Hogan
L. MISHA PREHEIM
Assistant Director

/s/Geoffrey M. Long
GEOFFREY M. LONG
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington D.C.  20044
Tel:  (202) 307-0159
E-mail:  Geoffrey.M.Long@usdoj.gov

OF COUNSEL:

JESUS N. SAENZ
Attorney
Office of the Chief Counsel
   For Trade Enforcement & Compliance
Department of Commerce

July 12, 2024

Attorneys for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the Rules of this Court, the Court's

Standard Chamber Procedures, and the Court's scheduling order (ECF No. 15) in that it contains

5,614 words, including text, footnotes, and headings.

/s/Geoffrey M. Long
GEOFFREY M. LONG

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| PRECISION COMPONENTS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 23-0218 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## <u>ORDER</u>

Upon consideration of the motion for judgment on the administrative record filed by plaintiff, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is DENIED;

ORDERED that the Department of Commerce's determination is affirmed in all respects; and it is further

ORDERED that judgment is entered in favor of the United States.


Dated: _____        _____
        New York, N.Y.                JUDGE JOSEPH A. LAROSKI, JR.