UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JOSEPH A. LAROSKI, JR. JUDGE

| | |
|---|---|
| Precision Components, Inc,<br><br>                    Plaintiff,<br><br>     v.<br><br>United States.<br><br>                    Defendant. | Ct No. 23-00218 |

**REPLY OF PLAINTIFF PRECISION COMPONENTS, INC TO RESPONSE OF DEFENDANT**

David J. Craven, Esq.
CRAVEN TRADE LAW LLC
3744 N Ashland Avenue
Chicago, Illinois 60613
Tel. 773-709-8506
David.craven@tradelaw.com
    Counsel for Plaintiffs

Dated: August 30, 2024

Table of Contents

Table of Contents ........................................................................................................... i

Table of Authorities ..................................................................................................... ii

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ............................. 1
    A.   *Introduction* ................................................................................................ 1
    B.   *Summary of Argument* .............................................................................. 1

II.  ARGUMENT ........................................................................................................ 2
    A.   *The Determination that the Order Covers Low-Carbon Steel Blanks is not Supported by Substantial Evidence and is not Otherwise in Accordance with Law* ............................................................................... 2
    1.   *The Plain Language of the Order Controls* .......................................... 2
    2.   *The Relief Requested in the 2023 Scope Ruling is Proper and Overcomes the Text of the Order and the Final Scope Ruling* ............. 5

III. CONCLUSIONi .................................................................................................. 6

Table Of Authorities

Cases:

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984).........3

*Loper Bright Enterprises, et al., Petitioners, v. Gina Raimondo, Secretary of Commerce, et al.* 144 S.Ct. 2244 (2024)........................................................4

*Xerox Corporation v. United States,* 289 F.3d 792 (Fed. Cir. 2002) .......................3

Statutes and Regulations

19 U.S.C. § 1516a(a)(2)(B)(vi)..................................................................................3, 4

19 C.F.R. 351.225(k)(1) ..............................................................................................2

19 C.F.R. 351.225 .......................................................................................................3

I. **INTRODUCTION AND SUMMARY OF ARGUMENT**

  A. *Introduction*

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade and the Court's Scheduling Order, Plaintiff Precision Components, Inc. respectfully submit this reply to the Response of defendant United States of America to the Motion and Memorandum presented by plaintiffs ("Memo"). As demonstrated below, the arguments submitted by the defendant are unavailing, and this matter should be remanded to the Department of Commerce with direction that the Department find that the goods in question fall outside the scope of the Antidumping Duty order on *Tapered Roller Bearings from the People's Republic of China* (A-570-601).

  B. *Summary of Argument*

The primary issues in this appeal are not complicated. The Department continued to characterize a raw material as a component and thus impermissibly brought such raw materials within the scope of the order on Tapered Roller Bearings from the People's Republic of China. The record is quite clear that the materials at issue are not bearing components or parts of bearings and could not be used in the production of bearings absent significant physical processes performed on the raw materials. The Department's determination including such products within the scope of the order was an impermissible expansion of the scope. The Defendant's

primary response in this matter was to engage in technical arguments, avoiding the substance of the arguments and the plain language of the scope of the order.

## II. ARGUMENT:

As a preliminary matter, plaintiff reiterates that its 56.2 motion contains substantial argument as to why the products in question should be found to be out of scope. Rather than attacking the substance of these arguments, Defendant is making a series of technical arguments seeking to prevail not based on the facts, but rather based on these technical arguments. The Court should reject this effort.

### A. The Determination that the Order Covers Low-Carbon Steel Blanks is not Supported by Substantial Evidence and is not Otherwise in Accordance with Law

*1.  The Plain Language of the Order Controls*

In pages 14 – 16 of the Defendant's reply, Defendant argues that the Department should apply the language of the order and the 2020 Final Scope Ruling as Primary Interpretative sources pursuant to 19 C.F.R. 351.225(k)(1).

Defendant turns to the language of the order and argues that as the scope did not differentiate between bearing and non-bearing steel, the nature of the material is not relevant. This argument should be rejected. While it is true that the scope did not differentiate between bearing and non-bearing steel, this is not remarkable. Bearings, as demonstrated in the 56.2 motion for Judgment and in the scope application, must be made bearing steel. Bearings made from non-bearing steel do

not properly function as standard bearings and cannot meet the certification requirements for bearings. (See Scope Ruling Request at page 7, PD 8).

Secondly, Defendant argues that the prior 2020 final scope ruling should be dispositive in finding that the low-carbon steel blanks at issue are the same products. In making this finding, Defendant drew this conclusion on secondary information and the absence of a claim that the products the subject of the scope ruling at issue were not covered by the 2020 Final Scope Ruling. Once again, this argument is unavailing. The scope ruling stands on its own, and the absence of a claim that something is not covered is not relevant. Plaintiff also did not claim that the blanks were not covered by antidumping duty orders on various types of steel.

Furthermore, the 2020 Scope Ruling was based, in large part, on 19 C.F.R. 351.225, and the Department's then discretion under *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842 (1984) to "fill gaps" both in promulgating regulations and in interpreting scope. 19 C.F.R. 351.225 was implemented to "fill the gap" in the statutes. As noted by the Court in *Xerox Corporation v. United States,* 289 F.3d 792 (Fed. Cir. 2002) the authority of the issuance of scope rulings appears to be 19 U.S.C. § 1516a(a)(2)(B)(vi). This provision does not directly authorize

the filing of scope rulings, nor does it provide procedures, rather it simply provides that Scope Rulings can be appealed to the CIT. The relevant provision states:

> (B)Reviewable determinations
>   The determinations which may be contested under subparagraph (A) are as follows:
>
> * * *
>
>   (vi)A determination by the administering authority as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order.
>   19 U.S.C. 1516a(a)(2)(B)(vi)

The statute, in other words, is totally silent on the procedures to be followed in scope ruling processes, and ultimately it is up to the Court to decide the meaning of the law. Up until earlier this year, the Department had discretion to fill gaps in the law with regulations and decisions and was granted discretion to their decisions.

Such discretion to fill gaps, however, was eliminated by the recent U.S. Supreme Court in *Loper Bright Enterprises, et al., Petitioners, v. Gina Raimondo, Secretary of Commerce, et al.* 144 S.Ct. 2244 (2024) which struck down the concept of *Chevron* deference and left the ultimate interpretation of the statute to the Court. At a minimum, this represents a "change" in the implementing law which limits the applicability of the 2020 Scope Ruling and supports an examination anew without reference to the prior scope ruling.

Finally, Defendant claims that the current scope ruling is merely an impermissible collateral attack on the 2020 Scope ruling. This is not the case. The

4

2020 Scope ruling is not being challenged. Rather, a scope ruling is being sought on a series of products with full information regarding the physical facts about the products, while there is some commonality, there is nothing more than conjecture that the two sets of products covered are identical[1]. As discussed below, the product at issue falls outside of the scope of the order and the 2023 Scope Ruling should be rejected.

    2. *The Relief Requested in the 2023 Scope Ruling is Proper and Overcomes the Text of the Order and the Final Scope Ruling*

In pages 16 – 21 of the Defendant's reply, Defendant argues that the blanks are within the scope of the order as while they are made with low-carbon steel and not bearing steel, they are parts as they are ultimately used to manufacture bearings and critically the scope of the order contains no reference to the raw materials. As discussed above, this argument is unavailing. In adopting this argument, the Defendant ignores that primary point – that bearings must be made from bearing steel or from material subject to significant processing to make it the equivalent of bearing steel. A bearing not made from bearing steel would not be able to function as a standard bearing. A part not made from bearing steel would, in turn, impact the production of the bearing. Thus, the nature of the material is embodied in the fact that "parts" must be made of bearing steel or steel sufficiently processed to make it

---

[1] Photographs, for example, are unavailing as a photograph of bearing does not disclose the nature of the steel and the specific chemical composition of the steel.

equivalent to bearing steel. The Department has not denied the primary factual claims – that the blanks are not made of bearing steel and that such blanks require substantial processing prior to the heat-treatment process. These blanks are many steps removed from the actual production of bearings and many steps removed from that of being a "part". They are nothing more than a raw material which can be used to manufacture a bearing. In order to become a bearing part, the raw material must undergo multiple additional processes, including substantial processes to modify the raw material into a physical state where it can then be heat treated prior to further processes to produce a bearing part. In finding that the articles are within the scope, however, Commerce ignored the clear language of the scope and relied upon precedent which, as discussed above, is no longer valid.

### III. CONCLUSION:

Precision Components, Inc. submits that the arguments presented by defendant are unavailing and that this matter should be remanded to Commerce with instructions consistent with the points set forth in this memorandum. Specifically, the Court should find:

- The steel blanks the subject of this scope request are outside of the scope of the order on Tapered Roller Bearings from the People's Republic of China

This matter should be remanded to the Department with direction that the Department reissue the scope ruling correcting the errors in the final scope determination

Respectfully submitted,

/s/ David Craven
David Craven

David J. Craven
Craven Trade Law LLC
3744 N Ashland Avenue
Chicago, IL 60613
(773)709-8506
David.craven@tradelaw.com

Counsel to Precision Components LLC

Dated: August 30, 2024